# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MAURICE CHILDS,**<br>　　**Plaintiff,**<br><br>　　**v.**<br><br>**UNIVERSAL COMPANIES,**<br>　　**Defendant.** | **CIVIL ACTION**<br><br>**NO. 15-3507** |

## MEMORANDUM RE: DEFENDANT'S MOTION TO DISMISS

**Baylson, J.**                                                                                                              **April   22   , 2016**

## I.    Introduction

In this employment case, Defendant Universal Companies filed a Motion to Dismiss one of two counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the Motion to Dismiss is DENIED.

## II.   Background

Accepting the facts in the Second Amended Complaint as true, Plaintiff Maurice Childs was employed by Defendant Universal Companies ("Universal") as a building engineer beginning in August 2012. Universal's property had eight buildings, each of which housed an academic institution specializing in various subjects. As a building engineer, Mr. Childs was responsible for maintaining a specific building on Universal's property. When Mr. Childs was required to work more than forty hours per week, he was paid overtime.

In May 2013, Mr. Childs was promoted to head engineer. This position required him to maintain the systems of all eight buildings. When he was promoted, Mr. Childs was told that an engineer and a maintenance technician

would be hired for each of the buildings to assist Mr. Childs, but no one was ever hired. Thus, Mr. Childs did not have any control over any Universal employees.

Plaintiff's supervisor was Ms. Tamelia Hinson, who was also the daughter of Universal's CEO. On a daily basis, Ms. Hinson would inform Mr. Childs of any maintenance that needed to be performed. She was also in charge of his hours. If Mr. Childs believed that maintenance was required beyond that which Ms. Hinson requested him to perform, he had to get approval to perform such maintenance from Ms. Hinson.

After Mr. Childs was promoted, Ms. Hinson informed him that he would no longer be eligible for overtime pay because his hourly wage was too high and granting him overtime would take available funds away from other team members. She reiterated his ineligibility for overtime on multiple occasions. When Mr. Childs' responsibilities required him to work more than forty hours per week, Ms. Hinson would change his time cards to prevent him from receiving overtime pay. Additionally, Mr. Childs alleges that he was required to work without compensation every Sunday from December 2014 until his termination in April 2015.

In December 2013, Mr. Childs received an email from Ms. Hinson informing him that his hours were 6am until 2:30pm and he was not to receive any overtime. Mr. Childs responded by explaining that he had to stay past 2:30pm in order to complete his tasks because he was the only engineer. If he actually left at 2:30pm, he would get in trouble for not doing his job.

Around September 2014, Mr. Childs made an internal complaint to his Human Resources ("HR") Representative, Stephanie Braddocks. Mr. Childs explained that he needed to work more than forty hours per week to complete his duties and informed Ms. Braddocks that Ms. Hinson altered his time cards when he worked more than forty hours per week. Ms. Braddocks told Mr. Childs that, in order to keep his job, he needed to do what Ms. Hinson said, which included clocking out at the required time and staying late to finish his work without payment.

Mr. Childs alleges that, to brand him as a bad employee, Universal harassed him by issuing frivolous write-ups during 2014: Around June 2014, he was written-up for helping a maintenance technician complete a task. In November 2014, he was written-up when a building was too cold on a Monday morning, despite the fact that he was prohibited from working Sundays to heat the buildings. A similar cold-building write-up occurred in December 2014.

Mr. Childs was terminated in April 2015 following two incidents. First, on April 20, 2015, Mr. Childs called Ms. Hinson and left her a voicemail telling her that he was sick and could not come in that day. Second, a few days later, he emailed Ms. Hinson and Ms. Braddocks once again to complain about his overtime and payroll. Ms. Hinson said she would arrange a meeting to discuss the issue on April 27, 2015.

On April 27, 2015, Mr. Childs received a call from Human Resources directing him to go to the Corporate Building. When he arrived, he was handed his termination notice. He was told that the basis for his termination were that

(1) on April 17, 2015 Ms. Hinson could not locate Mr. Childs during his shift and determined that he had abandoned his job and (2) Mr. Childs did not show up for work on April 20, 2015. As to the first ground, Plaintiff explained that he did not abandon his job. His job required him to frequently move between buildings, so he was often difficult to physically locate, but he could always be reached by phone. As to the second ground, Mr. Childs had called-in sick on that day.

**III.   Procedural History**

In the Original Complaint, Mr. Childs brought only one count: Retaliation in Violation of the Fair Labor Standards Act ("FLSA"). (ECF 1) Universal filed a Motion to Dismiss (ECF 7), and shortly thereafter, Mr. Childs filed a Second Amended Complaint as of right, adding a new count for Violation of the FLSA. (ECF 8) Universal filed a new Motion to Dismiss. (ECF 10)

Mr. Childs filed a Second Amended Complaint without leave of Court, and the Court issued an Order *sua sponte* requiring Mr. Childs to either obtain a stipulation from the Defendant to allow him to file a Second Amended Complaint or file a Motion seeking leave to amend. (ECF 13) Mr. Childs did the latter, and the Court granted the Motion. (ECF 15)

Universal then filed the instant Motion to Dismiss. (ECF 17). Plaintiff responded (ECF 19). Universal did not file a Reply.

**IV.   Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp. v. Amgen, Inc.*, 643

F.3d 77, 84 (3d Cir. 2011) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**V.   Discussion**

In the instant motion, Universal moves to dismiss only Mr. Child's FLSA retaliation claim (Count II).

Relevant to this case, the FLSA prohibits a company from taking adverse action against an employee "because such employee has filed any complaint . . . under or related to this chapter." 29 U.S.C. § 215(a)(3). To successfully plead that Universal retaliated in violation of the FLSA, Mr. Childs must allege:

1. He participated in a statutorily protected activity (e.g., filing a complaint).

2. Universal took adverse employment action against him.

3. There is a causal connection between Mr. Childs' protected activity and Universal's termination of Mr. Childs.

*Mackereth v. Kooma, Inc.*, No. 14-cv-4824, 2015 WL 2337273, *11 (E.D. Pa. May 14, 2015). The McDonald-Douglas burden-shifting scheme applies. *Cononie v. Allegheny Gen. Hosp.*, 29 Fed. App'x 94, 95 (3d Cir. 2002) (unpublished).

The sole issue in this Motion to Dismiss is whether any of Mr. Childs' communications to his supervisor and HR can qualify as "complaints" under the FLSA. The FLSA does not define complaint.

5

The only binding precedent on what constitutes a complaint comes from *Kasten v. Saint-Gobain Perf. Plastics Corp.*, 563 U.S. 1 (2011). There, the Supreme Court held that for a plaintiff "to fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* at 14. In the same decision, the Court held that this "standard can be met . . . by oral complaints, as well as by written ones." *Id.*

### A. Defendant's Arguments

Universal attacks Mr. Childs' Second Amended Complaint on only one ground, arguing that Mr. Childs has failed to allege that he ever made a "complaint" as that term is defined in the FLSA. Universal does not make any alternative arguments.

In support of its "complaint" argument, Universal relies chiefly on *Montgomery v. Havner*, 700 F.3d 1146 (8th Cir. 2012). *Montgomery* involved a dispute between a paralegal and an office manager at a law firm, where the office manager was the named partner's wife. *Id.* at 1148. At 4:55 one afternoon, the office manager told the paralegal and two other employees that they could all leave for the day and that the office manager would clock them out. *Id.* Later that evening, the paralegal learned that she had been clocked out at 4:45, but the other two employees were correctly clocked out at 4:55. *Id.* The paralegal called the office manager to ask why she had clocked-out the paralegal earlier than the two other employees. This phone call ended amicably, with the

office manager agreeing to adjust the paralegal's clock-out time. *Id.* The office manager called the paralegal back shortly thereafter, and the two got into a heated argument about a different office issue related to another employee's break times. *Id.* After this call, the named partner called the paralegal and terminated her employment. *Id.*

Based on these facts, the district court granted the defendants' motion to dismiss the complaint. On appeal, the Eighth Circuit affirmed, reasoning that "[n]o reasonable jury could conclude [the paralegal's] discussion with [the office manager] about the ten-minute deduction was a sufficiently clear and detailed FLSA complaint for the [defendants] reasonably to understand [the paralegal] was alleging an FLSA violation." *Id.* at 1149.

### B. Plaintiff's Arguments

Mr. Childs claims that he engaged in protected activity when he complained to Ms. Hinson regarding (1) nonpayment of overtime from November 2013 through his termination and (2) Ms. Hinson's alteration of his timecards to prevent him from receiving overtime compensation for the hours he had worked. He also avers that he engaged in protected activity when he complained to Ms. Braddocks about the same behavior.

In support of his arguments that these communications should qualify as FLSA "complaints" for the purpose of the anti-retaliation provision of the FLSA, Mr. Childs relies on *Chennsi v. Comm'ns Const. Grp., LLC*, No. 4-cv-4826, 2005 WL 387594, at *2-3 (E.D. Pa. Feb. 17, 2005). In *Chennsi*, the plaintiff raised concerns with his employer that the employer had failed to pay

7

him overtime in accordance with the FLSA. *Id.* at *1. The employer and the plaintiff subsequently entered into a settlement agreement in which the plaintiff agreed to release the employer from all then-existing claims, and the employer agreed to pay the plaintiff approximately $8,000. *Id.* Approximately two months after the parties entered a settlement agreement, the employer fired the plaintiff. At no time prior to his termination did the employee file a formal complaint or institute any FLSA proceedings. *Id.*

After being terminated, the employee brought an FLSA anti-retaliation claim. *Id.* The employer-defendant filed a Rule 12(b)(6) motion, arguing that the plaintiff-employee did not file a "complaint" within the meaning of the FLSA anti-retaliation provision because the employee never filed a formal complaint or instituted any proceeding under the FLSA. *Id.* at *1-2. The district court denied the motion upon determining that a formal complaint is not required to invoke the protection of the FLSA anti-retaliation provision. *Id.* at *3. The district court reached this decision in light of the Third Circuit's prior holding that the FLSA anti-retaliation provision should be read liberally. *Id.* at *2 (citing *Brock v. Richardson*, 812 F.2d 121 (3d Cir. 1987)).

### C. Evaluation of the Arguments

Third Circuit and Supreme Court precedent, although not directly on point, indicate a preference for a liberal interpretation of the word "complaint" in the FLSA's anti-retaliation provision.

As mentioned earlier, in 2011 the Supreme Court held that an employee satisfies the protected activity requirement of the FLSA anti-retaliation statute

8

if the employee's complaint is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Perf. Plastics Corp.*, 563 U.S. 1, 14 (2011). Accepting the allegations in the Second Amended Complaint as true, the Court finds that a reasonable jury could find that Mr. Childs' complaints to Ms. Hinson and Ms. Braddocks were sufficiently clear assertions of rights protected by the FLSA. Although Mr. Childs did not specifically refer to the FLSA when making his complaints, given the context and the content of his complaints, a reasonable employer would have understood that Mr. Childs was asserting rights protected by the FLSA.

Third Circuit precedent, although not directly on point, also supports today's ruling. In *Brock v. Richardson*, the defendant-employer mistakenly believed that the plaintiff-employee had reported an FLSA violation to the Wage and Hour Division of the Department of Labor. *Brock v. Richardson*, 812 F.2d 121, 122 (3d Cir. 1987). In a bench trial, the district court found that the employer's mistaken belief in this fact caused the employee to be fired, and the court awarded judgment to the employee on this basis. *Id.* at 123.

On appeal, the defendant-employer argued that the FLSA anti-retaliation provision should not apply because the employee did not actually make a complaint, rather, the employer only believed that the employee had made a complaint. *Id.* at 123. The Third Circuit rejected this argument. The court emphasized that employee reporting is the primary enforcement mechanism of

9

the FLSA. *Id.* at 124 (citing *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)). The Third Circuit gleaned that "the key to interpreting the anti-retaliation provision is the need to prevent employees' 'fear of economic retaliation' for voicing grievances about substandard conditions." *Id.* at 124 (quoting *Mitchell*, 361 U.S. at 292).Thus, the court indicated that when "the employee's activities [are] considered necessary to the effective assertion of employees' rights under the Fair Labor Standards Act," then those activities are "entitled to protection." *Id.* at 124.

Applying this Third Circuit standard, the Court concludes that a jury could find that Mr. Childs' reports to his supervisors regarding the non-payment of his overtime were necessary to the effective assertion of employees' rights under the FLSA. "The [FLSA] seeks to prohibit 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *Kasten v. Saint-Gobain Perf. Plastics. Corp.*, 563 U.S. 1, 11 (2011) (quoting 29 U.S.C. § 202(a)). "It relies for enforcement of these standards . . . upon 'information and complaints received from employees seeking to vindicate rights claims to have been denied.'" *Id.* at 11 (quoting *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)).

And finally, on a practical note, if the FLSA's anti-retaliation provision did not apply, then an employer could fire without recourse any employees who complained to their supervisors about the employer refusing to pay legally

required overtime wages. This was surely not the purpose of the anti-retaliation provision.

## VI. Conclusion

An appropriate order follows.

O:\CIVIL 15\15-3507 childs v. universal\15CV3507.4.19.16.Memo.M2D.docx